OPINION OF THE COURT
William F. O’Brien, III, J.
Defendant North American Administrators, Inc., presently moves for summary judgment dismissing the complaint in the above-titled action. Plaintiff Madison-Oneida-Herkimer Consortium cross-moves for an order compelling disclosure of its outstanding discovery demands and partial summary judgment on its breach of contract claim. Plaintiffs discovery motion was granted at the court’s April 4, 2003 motion term and a separate order was issued.
*366 Statement of Facts
Plaintiff is a consortium of school districts who pool their resources to provide self-funded health benefits to its employees. Plaintiff derives its existence from section 119-o of the General Municipal Law, which allows for municipal entities to enter into cooperative arrangements to facilitate the performance of their duties. Defendant is a corporation which provides claims payment and consulting services for employee health insurance plans.
Plaintiff and defendant entered into a series of administrative sendees agreements (hereinafter ASA) between the period of January 1990 to June 1998[1] which called for defendant to administer plaintiff’s self-funded health insurance benefit plan. Specifically, the ASAs called for defendant to “promptly process all claims presented by eligible employees for payments of benefits according to the terms of the Plan description.” Defendant’s services were divided into four categories: (1) medical and dental claims, (2) prescription claims, (3) managed care claims, and (4) preferred provider network services. The ASA does not define these categories. The ASAs further required plaintiff to maintain and fund a bank account upon which defendant was authorized to draw checks to pay the claims of plaintiffs subscribers. The ASAs required defendant to issue monthly reports of claims paid. In practice, defendant issued weekly check registers for plaintiffs review.
David W. Miller, a senior vice-president for defendant, explained the managed care aspect of the services provided to plaintiff in his examination before trial. He described managed care cases as the precertification and review of claims where the potential existed for inpatient care or some other continuing course of treatment. Miller stated that such cases were initially referred to an outside company, which would review the proposed course of care. The managed care company would then attempt to negotiate a discount on the reasonable and customary charges of the proposed course of treatment. The managed care company would take a fee for its services, typically 50% of any discounts obtained.
Miller sent a letter to plaintiff dated May 2, 1990 advising that defendant had formed an affiliated company called *367 CareNet whose function was to perform “clinical review of medical cases” and “assist in establishing Preferred Provider Organization (PPO) discounts.” Miller’s letter asserted that the services CareNet would provide went “well beyond the scope of claims administration.” The letter stated that third-party sources had been utilized for such services in the past and that such third-party organizations typically charged a fee of 50% of any savings realized through the procurement of PPO discounts. CareNet, the letter stated, would provide the same while taking a fee of only 25% of any savings realized and no fee if no savings were realized by the use of CareNet services. Miller’s letter concluded: “If you would prefer that NAA continue to refer these specialty cases to an outside firm, please let me know. Otherwise, CareNet will be utilized if medical review is required. Please call if you have any questions.”
Teresa Fobare (also known as Teresa Bittel at the inception of the parties’ relationship), the business manager for plaintiff throughout the course of the parties’ business dealings, states by way of affidavit that she received Miller’s letter, read it as a mass-mailed solicitation for business beyond the scope of the parties current agreement, and disregarded the contents without responding either in writing or otherwise and without forwarding the letter to anyone else to be reviewed. Fobare further asserts that no one from defendant contacted her to follow up on the letter. She also testified at her examination before trial that she did not recall ever discussing the letter with David Miller.
Upon receiving no response to the letter from plaintiff, defendant began referring plaintiff’s managed care cases to CareNet. CareNet, in turn, charged a fee equal to 25% of any discounts obtained in the management of cases. .Defendant paid these fees to CareNet by drawing checks from the bank account established pursuant to the ASAs for the purpose of paying the claims of plaintiffs subscribers. Defendant issued quarterly “savings reports” to plaintiff which showed the dates of service and of claim payment, the claim number, the amount paid for the service, the amount of discount obtained by CareNet, and the fee charged for CareNet’s services. Defendant’s performance was audited each year during the course of the parties’ relationship by D’Arcangelo & Co., a public accounting firm hired by plaintiff.
The parties continued in this course of conduct until they mutually agreed to terminate the relationship by June 30, 1998. Shortly thereafter, plaintiff claims to have discovered *368 that defendant was taking unauthorized payments from the bank account designated for claims payment when an independent audit was performed by Locey & Cahill, LLC, at plaintiffs request.
Relevant Law/Analysis
The primary cause of action in the complaint alleges that defendant breached the AS As by charging plaintiff “excessive fees” which were not authorized by the parties’ contractual relationship. The complaint alleges that these excessive fees were taken periodically during the performance of the parties AS As covering the time periods of January 1,1992 to December 31, 1994, and January 1, 1995 to December 31, 1998, which was later amended to end on June 30, 1998. Defendant interposed several defenses to this cause of action in its answer, including that the action is barred by the applicable statute of limitations and the equitable defenses of waiver, laches, ratification and estoppel.[2] Defendant now seeks summary judgment dismissing the complaint based upon its affirmative defenses.
In order to obtain summary judgment, it is necessary that defendant establish one or all of its defenses “sufficient to warrant the court as a matter of law in directing judgment” in its favor. (CPLR 3212 [b].) Defendant, as the moving party, bears the initial burden to demonstrate the absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067-1068 [1979].)
Plaintiffs Unjust Enrichment and Fraud Claims
The third cause of action in the complaint alleges that defendant was unjustly enriched by taking fees for the CareNet services it claims to have provided plaintiff. In order to succeed on this claim, plaintiff must show that (1) defendant received money from plaintiff, (2) defendant benefitted from the receipt of the money, and (3) defendant should not be permitted to retain such money under principles of equity and good conscience. (Matter of Witbeck, 245 AD2d 848 [3d Dept 1997].) While there is no dispute that defendant both received money from plaintiff and benefitted from it, the facts in the present record are insufficient to establish whether defendant is entitled to retain the CareNet fees. Plaintiff has *369 raised allegations that the CareNet services in question were services which should have been performed under the terms of the ASAs and that charging an extra fee for such services was improper. Defendant argues in several forms that the CareNet services were outside the scope of the ASAs and that plaintiff would have had to pay some company, whether it was CareNet or another third party, to handle its managed care cases. Such issues of interpretation are best left to a factfinder.
Regarding plaintiff’s fraud and constructive fraud claims, nothing in the record supports plaintiff’s allegation that defendant knowingly submitted false invoices to plaintiff in an attempt to conceal the fees that were being paid for CareNet services. Giving plaintiff the benefit of all favorable inferences in reading the record, there is no evidence to support either the claim that defendant operated with a motive to deceive plaintiff or that defendant purposely abused a fiduciary duty. (See Flora v Kingsbridge Homes, 214 AD2d 834 [3d Dept 1995].) Accordingly, plaintiff’s fraud claims must be dismissed.
Statute of Limitations Defense
With regard to defendant’s contention that plaintiff’s breach of contract claim is time-barred, the applicable statute of limitations is six years for contract causes of actions. (CPLR 213.) The action was commenced with the filing of the complaint with the Madison County Clerk on January 28, 2000. Therefore, any of plaintiff’s claims which accrued prior to January 28, 1994 would be time-barred.
Here, the complaint makes no reference to any claims arising from the ASA covering the time period of January 8, 1990 to December 31, 1991; and since any claims arising under the ASA covering the time period of January 1, 1995 to December 31, 1998 are plainly within the allowable time period, the only claims which may be time-barred are ones arising under the ASA covering the time period of January 1, 1992 to December 31, 1994. Since the only motion presently before the court is one to dismiss the entire complaint, and it is evident that at least a significant portion of plaintiff’s claims are timely, the motion for summary judgment on these grounds must be denied.
Defendant’s Equitable Defenses
As a threshold matter to analysis of defendant’s equitable defenses of laches, waiver, estoppel or ratification, the parties disagree as to whether plaintiff should be treated as a municipal corporation for the purpose of analyzing defendant’s *370 claimed defenses. Plaintiffs argument is predicated upon the assumption that it is, for purposes of the discussion of the present case, the equivalent of a municipal corporation since it is composed entirely of municipal entities and is organized pursuant to General Municipal Law § 119-o. Defendant contends that plaintiff should not be considered as a municipal corporation because it follows the more informal business practices of a private entity rather than being strictly bound by statutory regulation of its activities.
While no authority directly addresses this question in the context of equitable defenses, the existing case law compels the finding that plaintiff should be treated as a municipal corporation for the purpose of this case. (See Matter of Passino v Jefferson-Lewis Empls. Healthcare Plan, 277 AD2d 1028 [4th Dept 2000] [holding that defendant municipal cooperative health benefit plan created pursuant to General Municipal Law § 119-o was an “agency” subject to Freedom of Information Law requests because it was created to benefit public employers]; Matter of American Ref-Fuel Co. of Niagara v Northeast Southtowns Solid Waste Mgt. Bd., 291 AD2d 861 [4th Dept 2002] [holding that contract dispute between waste hauler and municipal consortium for waste management created pursuant to General Municipal Law § 119-o concerned a “public contract”].) It is noteworthy that both of the above-mentioned actions were article 78 proceedings, indicating that some state action was involved and further supporting the notion that entities created pursuant to General Municipal Law § 119-o have the same status as the individual municipal entities that create them.
Such status for plaintiff is important when analyzing defendant’s affirmative defense of estoppel. It is well-settled law that an estoppel defense is not recognized against a public agency in the absence of exceptional circumstances, which do not exist on the present record. (Matter of Massa v City of Kingston, 284 AD2d 836 [3d Dept 2001].)
Even if plaintiff did not enjoy public agency status, defendant would have to show that plaintiff engaged in either words or conduct which amounted to a misrepresentation or concealment of material fact. (Matter of Rashbaum v Tax Appeals Trib. of State of N.Y., 229 AD2d 723 [3d Dept 1996].) Defendant’s theory of estoppel appears to be that plaintiffs silence in the face of the May 2, 1990 letter from David Miller explaining defendant’s intended use of CareNet for managed care claims, as well as its silence while receiving savings reports and check registers detailing the discounts obtained by and fees paid to *371 CareNet, amounts to wrongfully inducing defendant to provide CareNet services without intending to pay for them. However, in order to rise to the level of estoppel, plaintiffs silence would have to rise to the level of bad faith — having the effect of misleading the defendant where plaintiff knew or should have known that such silence would mislead defendant into its eventual course of action. (Rainbow Commercial Alliance v Licciardi, 89 Misc 2d 841 [Civ Ct, Queens County 1976].) Since defendant offers no evidence that plaintiff acted out of anything but ignorance for defendant’s conduct, it has failed to establish entitlement to judgment on its estoppel defense.
Defendant’s waiver defense fails because such a claim must show that plaintiff intentionally abandoned its right to question whether defendant’s use of CareNet and subsequent payment of fees to CareNet were authorized and agreed upon by the parties. (Peck v Peck, 232 AD2d 540 [2d Dept 1996].) Defendant again makes no allegation, and the record gives no indication, that plaintiff had any idea that it may have had a claim against defendant based upon its CareNet activity until the Locey & Cahill audit was performed in late 1998. Since waiver cannot occur through negligence, oversight or thoughtlessness, defendant’s waiver defense also falls short of its burden to show entitlement to judgment. (See Agati v Agati, 92 AD2d 737 [4th Dept 1983].)
Defendant also asserts that plaintiff ratified the terms of the May 2, 1990 letter discussing the use of CareNet and the subsequent fees paid for CareNet’s services. Defendant claims that plaintiffs failure to object to either the use of CareNet or, more importantly, the fees paid to CareNet and listed in the savings reports amounted to ratification of these acts. This defense also fails because of the well-settled principle that “acceptance of services performed under an unauthorized contract does not estop a municipality from asserting the invalidity of the contract.” (Matter of Garrison Protective Servs. v Office of Comptroller of City of N.Y., 92 NY2d 732, 736-737 [1999].) This concept is equally applicable to the present circumstances, where plaintiff contends that no agreement ever existed between the parties allowing for the provision of CareNet’s services or the payment of fees to CareNet. In the absence of evidence that plaintiffs board of directors knew that defendant was providing CareNet services to plaintiff and charging fees for the services with the belief that the parties had a contract for the provision of such services, a question of fact exists as to whether plaintiff ratified defendant’s activity by its silence. (See Seif v City of Long Beach, 286 NY 382 [1941].)
*372 Plaintiffs Summary Judgment Motion
Plaintiff contends that it is entitled to summary judgment on its breach of contract claim because all of the contracts underlying this action contained express clauses prohibiting modification or amendment of the contracts except by written agreement of the parties. In the absence of a written document, executed by duly authorized representatives of both parties, plaintiff contends that defendant’s practice of paying fees to CareNet out of the bank account which was designated solely for the payment of plaintiffs claims constituted a breach of the ASAs.
In response, defendant argues that the May 2, 1990 letter from David Miller to plaintiff was an offer to provide services outside the scope of the ASA that was in force at the time. Defendant further seems to argue that plaintiffs failure to reject the offer contained in the Miller letter, coupled with plaintiffs acceptance of CareNet services and continued payment of CareNet fees throughout the life of the parties’ relationship, constitute a de facto acceptance of the offer. Thus, according to defendant’s theory, a contract-in-fact existed between the parties under the terms presented in the Miller letter which allowed for the referral of managed care cases to CareNet and payment of fees to CareNet as specified in the Miller letter.
Defendant further points out that plaintiff was regularly notified of defendant’s use of CareNet and the fees paid to CareNet through the weekly check registers and through the quarterly savings reports. The check registers, defendant notes, contained specific entries indicating CareNet as a payee of checks, the amount paid to CareNet and the claim number under which the CareNet fee was earned. The savings reports came with a cover letter that defendant contends clearly identified all discounts obtained by CareNet, thus giving plaintiff full notice of CareNet’s activity and placing plaintiff on notice of such activity. Defendant contends that plaintiffs silence in the face of this regularly-provided information indicates plaintiffs assent to defendant’s use of CareNet and created a contract for the provision of such services. Thus, defendant has presented a viable legal scenario which raises a question of fact regarding plaintiffs breach of contract claim. (See McIntosh v Niederhoffer, Cross & Zeckhauser, 106 AD2d 774 [3d Dept 1984].)
In response, plaintiff contends that the check registers were not sufficient to provide notice of the fees paid to CareNet because most of these documents contained hundreds of entries and often only a few would be payments to CareNet. Addition *373 ally, plaintiffs business manager Teresa Fobare gave deposition testimony that she believed the services listed in the savings reports were services performed within the scope of the ASAs and thus had no reason to suspect that defendant was engaged in activity outside of the terms that the parties agreed to in the ASAs. However, these arguments are not sufficient to resolve the questions of fact surrounding the breach of contract claim which precludes summary judgment in plaintiffs favor.
Accordingly, for the reasons set forth, defendant’s motion for summary judgment is granted as to plaintiffs constructive fraud claim but denied as to plaintiffs breach of contract and unjust enrichment claims, and plaintiffs cross motion for summary judgment on its breach of contract claim is also denied.

. For the purpose of this action, only the ASAs covering the time periods between January 1,1992 to December 31, 1994, January 1, 1995 to December 31, 1998 and the amendment terminating the parties’ relationship as of June 30,1998 are pertinent. The initial ASA covering January 8,1990 to December 31, 1991 falls outside the statute of limitations for contract actions and is not referred to in the complaint.

. Additionally, defendant moved to amend its pleadings to include an affirmative defense of account stated. Defendant’s motion was denied by this court’s reserved decision dated December 7, 2001.